UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Sandra Gossett<br>1216 Gold Crest Drive<br>Medina, OH 44256<br><br>Plaintiff,<br><br>-vs.-<br><br>The J. M. Smucker Company<br>c/o Mark Smucker<br>1 Strawberry Lane,<br>Orrville, OH 44667<br><br>Defendant. | CASE NO.: 5:23-cv-59<br><br>JUDGE: JUDGE ADAMS<br><br>**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e,** *et seq.*<br><br>**JURY DEMAND ENDORSED HEREON** |

FILED
JAN 12 2023
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

For her Complaint against Defendant, The J. M. Smucker Company, Plaintiff Sandra Gossett states:

### INTRODUCTION

1. Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII") by failing to provide Plaintiff with required religious accommodation and by failing to engage in an interactive process to determine and provide reasonable accommodation.

2. This suit seeks to remedy Defendant's statutory violations and discrimination against Plaintiff who requested a religious accommodation from Defendant's mandate that employees receive the COVID-19 vaccine.

3. Rather than comply with its obligations under Title VII, Defendant threatened to terminate Plaintiff if she did not get vaccinated for COVID-19 and terminated Plaintiff for failure to do so.

4. Defendant's statutory violations, discrimination, and retaliation left Plaintiff with the choice of receiving the COVID-19 vaccine in violation of her sincerely held religious beliefs or losing her job.

1

**JURISDICTION AND VENUE**

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

**PARTIES**

6. Plaintiff Sandra Gossett lives in Medina, Ohio and worked as Manager of Core and Application Services at The J. M. Smucker Company.

7. Defendant, The J.M. Smucker Company ("SMUCKER"), is an American marketer and manufacturer of jam, peanut butter, jelly, fruit syrups, beverages, shortening, ice cream toppings, and other food products in North America. Defendant is headquartered in Orrville, Ohio.

**FACTUAL ALLEGATIONS**

8. Plaintiff worked at SMUCKER for 27 years with a hiring date of December 27, 1994. As the Manager of Core and Application Services, Plaintiff supervised eight (8) employees and three (3) consultants.

9. During her employment at SMUCKER, Plaintiff was an employee in good standing and without exception received positive performance reviews, the majority of which were "exceeds expectations." In June of 2021, after working from home for more than a year, she received an "exceeds expectations" on her performance review and was awarded a large Annual Incentive Plan ("AIP") bonus.

10. Plaintiff successfully worked from home during the pandemic beginning March 2020 and continuing through her termination effective December 16, 2021. During that time, she came into the office only on a few occasions – either to pick up equipment or to attend the December 2021 holiday office party.

11. Upon information and belief, Defendant implemented a work from home ("WFH") policy

for corporate employees beginning in March of 2020 and extended it several times. On August 16, 2021, CEO Mark Smucker extended WFH for employees whose "roles allow" through the end of 2021. Ultimately it was extended to "no sooner" than the core week of January 24, 2022. In the September 21, 2021 FAQ, a 25% in-person requirement was mentioned but not enforced until the week of January 24, 2022. Although January 24, 2022 served as the formal return to work date, Defendant allowed the unvaccinated to continue to work from home until mid-March of 2022.

12. On September 23, 2021, the Executive Administrative Assistant for Information Services ("IS") emailed Plaintiff that corporate policy required at least 25% in person attendance at the office and that IS communicated a 30% requirement. However, this was never enforced until January of 2022, and unvaccinated employees still did not have onsite access at corporate or sales offices until March of 2022.

13. Upon information and belief, three (3) other unvaccinated employees in the same department as Plaintiff were granted temporary exemptions and worked from home past the December 15 deadline. On March 15, 2022, these same employees received an email from Mandy Johnson ("JOHNSON"), Director of Employee Relations, welcoming their in-person return to work at all corporate and sales offices. Upon information and belief, 49 accommodated unvaccinated employees received this email.

### A. Defendant's Vaccine Mandate

14. On September 9, 2021, President Biden issued Executive Order 14042 (the "Order").[1]

15. The Order required that all contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task Force (the "Task Force") guidance regarding Covid-19 safeguards.

---

[1] https://www.presidency.ucsb.edu/documents/executive-order-14042-ensuring-adequate-covid-safety-protocols-for-federal-contractors [last accessed 1/12/2023]

16. Following issuance of the Order, Task Force guidance required Covid-19 vaccination.[2]

17. Task Force guidance called for federal contractor employees to receive a complete round of Covid-19 vaccinations by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons.[3]

18. Around the same time the Federal Government co-opted Occupational Health and Safety administration ("OSHA") to issue a rule requiring employers with over 100 employees to mandate Covid-19 injections for their workforce.[4]

19. On September 10, 2021, CEO Mark Smucker announced via email that all U.S. employees would be "asked and expected" to be fully vaccinated in the months ahead. Smucker stated, ""While the immediate phase in front of us is a vaccine expectation, and not a mandate, we want to be clear that a mandate is on the horizon. This is necessary as we comply with federal requirements and act in support of our people and business." This was in addition to the indoor masking and social distancing protocol already in place at the Orrville corporate and certain other locations.

---

[2] https://www.saferfederalworkforce.gov/contractors/
[3] *Id.* at 5. This mandate was stayed on December 7, 2021, when the Southern District of Georgia enjoined the Order nation-wide for federal contractors (*See Georgia v. Biden*, 574 F.Supp.3d 1337 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022). In response to this nationwide injunction, Department of Defense guidance indicated on December 9, 2021 that it would not enforce the mandate on existing contracts and, on December 10, 2021, the Task Force updated its guidance stating that the government would not seek to enforce the clause implementing requirements of the Order where the place of performance identified in the contract is in the U.S. or an area subject to the injunction (*See "UPDATE TO ALERT DATED 12/7/21: Federal Court in Georgia Enjoins Enforcement of Federal Contractor/Subcontractor Vaccine Mandate Nationwide,"* https://www.smithcurrie.com/publications/covid-19/alert-federal-court-in-georgia-enjoins-enforcement-of-federal-contractor-subcontractor-vaccine-mandate-nationwide/
[4] On November 12, 2021, the U.S. Fifth Circuit Court of Appeals reaffirmed the halt of the large employer vaccine mandate as part of a nation-wide stay, and OSHA temporarily suspended its enforcement. On December 17, 2021, the U.S. Sixth Circuit Court of Appeals lifted the nationwide ban on the mandate. Finally, on January 13, 2022, the U. S. Supreme Court blocked enforcement of the emergency vaccine mandate for businesses with 100 or more employees. OSHA formally withdrew the mandate on January 26, 2022 (See "Vaccine Mandate Litigation," https://law.georgia.gov/resources/vaccine-mandate-litigation).

20. This announcement was soon followed by another email from Mark Smucker on September 21, 2021, that Defendant expected all U.S. salaried employees to be fully vaccinated by December 15, 2021. Defendant stated it would grant legally protected religious and medical exemptions. A link to a recorded Town Hall Meeting and an FAQ document accompanied the email. The meeting stressed that the vaccine expectation was because Defendant was a federal contractor.

21. On October 11, 2021, this expectation officially became a mandate for all U.S. salaried employees due to Defendant's status as a federal contractor. Smucker stated, "When we announced our vaccine *expectation* two weeks ago, it was our intent to take things at our own pace; to work together in partnership toward a vaccinated workplace. We knew at the time a mandate was almost certainly on the horizon based on forthcoming federal requirements, but the timeline was uncertain." Smucker further stated, "**This is no longer an expectation, but a requirement and condition of employment. Employees who do not comply with our Mandatory Vaccination Policy will be separated from the Company Dec. 16, 2021, and will not be eligible for severance.**" This mandate did not apply as a condition of employment to hourly manufacturing and distribution employees.

**B. Federal Law Prohibiting Religious Discrimination and Retaliation**

22. Title VII requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1) (Up to date as of December 28, 2022).[5]

23. "[T]he sincerity of an employee's stated religious belief is usually not in dispute and is 'generally presumed or easily established.'" *See "Section 12: Religious Discrimination"* § 12-1. A.2, EEOC (Updated January 15, 2021).[6]

---

[5] https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2
[6] https//www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref40

5

24. Title VII prohibits Defendant from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's [...] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

25. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees but is not required to incur undue hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000).

26. Title VII also prohibits Defendant from retaliating against employees for engaging in protected activity. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

27. U.S. Equal Employment Opportunity Commission (EEOC) guidance on Title VII and the COVID-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." Telework is one example of reasonable accommodation to vaccination. *See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws"* §§ K.1, K.2, K.12, EEOC (Updated July 12, 2022).[7]

28. Although Defendant let employees apply for a religious or medical disability exemption to Covid-19 vaccination, Plaintiff's request for religious exemption was treated differently and processed in a discriminatory manner.

**C. Defendant's Accommodation Request System**

29. Defendant SMUCKER created a method for employees to request accommodation for exemption from Defendant's Covid-19 vaccination requirement. Employees had to submit requests by November 1, 2021.

---

[7] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

6

30. Employees could request accommodation from the vaccine for religious reasons by submitting an explanation of their sincerely held religious belief and documentation from their religious leader as to the religious belief conflicting with the vaccine requirement. This explanation could be submitted either through a completed exemption form or a written explanation.

31. Defendant explained neither the review process nor the criteria for judging exemption requests to those submitting the requests.

32. Requests for reasonable accommodation to vaccination had to be submitted by November 1, 2021.

### D. Plaintiff's Accommodation Requests and Defendant's Responses

33. On October 19, 2021, Plaintiff submitted her religious exemption request with attached pastor's letter to the specified mailbox. Plaintiff received an automated reply that they had received her information and would review it.

34. Plaintiff's exemption request detailed the reasons for her religious conflict including: the use of aborted fetuses in the development and/or production of the vaccines, the invasion of her body (the temple of the Holy Spirit) with a toxic substance, and coercion against her informed consent when her religious beliefs require that all medical treatment be conditioned on informed consent. As a Christian who believed in the Bible, including New Testament teachings, she could not accept the Covid-19 vaccine because it would violate her sincerely held religious beliefs and moral conscience. In addition, Plaintiff clearly stated in her exemption request that she had never *knowingly* taken any vaccine or medication that was developed or produced with aborted fetal cells, that invaded her body with foreign toxins, or that were compelled against informed consent. As an accommodation to the vaccine, Plaintiff offered to work remotely as she had already been doing throughout the pandemic.

35. On October 28, 2021, Plaintiff received a same-day meeting invite to a "Confidential: Exemption Request Discussion" with Janine Hutchison ("HUTCHISON") and Katie Crumrine ("CRUMRINE") of HR Employee Relations Leaves and Absences at Orrville Corporate. Although this meeting conflicted with one of Plaintiff's prior scheduled business meetings, Plaintiff ended up rescheduling the business meeting so she could attend the exemption discussion.

36. On that same day, October 28, 2021, Plaintiff met with HUTCHISON and CRUMRINE for the exemption request discussion. During the meeting, HUTCHISON and CRUMRINE asked a series of questions, including whether Plaintiff had any other prior vaccines. Plaintiff fully answered every question – the majority of which were already covered in her religious exemption request – but expressed that she needed to ask how the question on prior vaccines was relevant to her religious beliefs. She had already clearly stated in her religious exemption request that she had never *knowingly* taken any vaccine or medication that violated the three (3) core religious beliefs in her request (*See above*). Because of this she perceived the probe into prior vaccines to be medically related rather than part of determining whether she held sincerely religious beliefs conflicting with the vaccine. She stated that it was private medical information only discussed with her doctor.

37. In response, HUTCHISON reassured Plaintiff that she "absolutely did not have to answer." CRUMRINE reaffirmed that it was "certainly" Plaintiff's right to not answer in terms of the consideration. Neither HUTCHISON nor CRUMRINE indicated in any way that failing to respond with the requested detail would damage Plaintiff's exemption status. Instead, they assured her that she did not have to answer. At the end of the meeting, one of the interviewers admitted that she had never even seen Plaintiff's exemption request letter.

38. Neither HUTCHISON nor CRUMRINE sought to discuss reasonable accommodation during the exemption request meeting on October 28, 2021.

39. Whether Plaintiff had prior vaccines is not related to the inquiry regarding whether Plaintiff's religious beliefs are sincere or whether reasonable accommodations can be provided. The question is an interrogation tactic intended only to coerce Plaintiff to capitulate to Defendant's demands.

40. Defendant's entire process for requesting religious exemption, including same-day confidential meetings with little to no time for Plaintiff to prepare combined with the lack of information as to the form and content of discussion, was geared to intimidate and discourage Plaintiff from seeking religious exemption.

41. On November 11, 2021, Defendant emailed Plaintiff that her requested exemption and accommodation had been denied. Defendant failed to provide any explanation as to why Plaintiff's request was rejected. Plaintiff was told to contact HR Home for questions or to provide more information supporting her request. Again, Defendant made no attempt to interact with Plaintiff regarding reasonable accommodations.

42. On November 11, 2021, Plaintiff emailed the Employee Relations mailbox and asked for the reason for denial. Plaintiff wanted to know the reason for denial so she could submit relevant additional information and appeal.

43. On November 15, 2021, Plaintiff spoke with HR Home and requested that someone get back with her as to why her work from home accommodation was denied. She explained that she wanted to understand the reason so she would know what additional information to submit.

44. On November 16, 2021, HR Home emailed Plaintiff that the Employee Relations mailbox should respond to her but that they would not give the reason or rationale for the denial. Although

she was invited to submit more information for consideration, Plaintiff still had no idea what information to submit because Defendant refused to provide any reason for denial, or the criteria used for determination. Defendant did not mention or try to interact with Plaintiff regarding reasonable accommodation.

45. On November 18, 2021, Bryan Hutson ("HUTSON"), Vice President of IS, asked to meet with Plaintiff about her status because he saw her name on "the list." Plaintiff explained that she was still waiting on HR to tell her what additional information she could provide in the hope that they would review her accommodation request again. HUTSON asked Director of Employee Relations JOHNSON what more information Plaintiff could provide. JOHNSON responded that they used an objective set of criteria, and that Plaintiff should just review everything she submitted, revisit any questions they asked and address anything Plaintiff could not fully address during the meeting.

46. On November 19, 2021, HUTSON followed up with an email to Plaintiff advising that she should revisit their questions.

47. On November 22, 2021, Employee Relations responded to Plaintiff's inquiry as to the reason for rejection by stating the committee's decision was not subject to appeal or further inquiry but that she could submit more information for the committee's consideration. Defendant did not mention or try to interact with Plaintiff regarding reasonable accommodation.

48. On December 1, 2021, Plaintiff received her final HR Workday notice that she had to either report her vaccination or follow the transition summary. She was told to turn in all her equipment by 5 P.M. on December 15, 2021.

49. On December 6, 2021, Plaintiff met with HUTSON and Director of Infrastructure Travis Boyd ("BOYD") and communicated that HR still would not provide an answer or guidance as to

what information they wanted to help her case. Plaintiff expressed she did not understand why no one would just sit down with her and "talk it out" to reach an accommodation. BOYD stated that he absolutely saw no reason not to support a work from home accommodation for her and would respond supportively if asked. HUTSON asked Plaintiff to respond more fully about prior vaccines because during the exemption request discussion she had responded that it was private medical information. HR told HUTSON they would be willing to review this information again, and HUTSON followed up with a joint email to Plaintiff and BOYD confirming.

50. On that same day, December 6, 2021, Plaintiff emailed JOHNSON, HUTCHISON, and the Employee Relations mailbox that she had never taken a flu vaccine and had taken no additional vaccines as an adult. Plaintiff had already stated in her exemption request that she had never knowingly taken a vaccine or medication developed or produced with aborted fetal cells, that invaded her body with foreign toxins, or that were compelled against informed consent.

51. On December 8, 2021, HUTCHISON replied that although they had reviewed her email and past communications, they denied her request based on the information she initially submitted, her answers or lack thereof during the interactive process, and any other "objective" information she may have submitted. Plaintiff was told to be vaccinated by December 15, 2021 or be terminated. HUTCHISON did not provide a reason or rationale for the denial and did not mention or try to interact with Plaintiff regarding reasonable accommodation.

52. Plaintiff was terminated effective December 16, 2021.

**E. EEOC filing and Plaintiff's right to sue**

53. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

54. The EEOC issued Plaintiff a Notice of Right to Sue on October 14, 2022.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Failure to Accommodate

55. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

56. Plaintiff holds sincere religious beliefs that preclude her from receiving a COVID 19 vaccine.

57. Plaintiff informed Defendant of those beliefs and requested accommodation from the vaccine on religious grounds.

58. Although Plaintiff stated her willingness to comply with alternative measures such as working remotely from home, Defendant failed to engage in an interactive process with Plaintiff regarding her request for religious accommodation. Plaintiff repeatedly contacted Defendant about her exemption request and accommodation. Defendant responded to Plaintiff's attempts at resolution with blanket denials even though Plaintiff had successfully worked from home throughout the pandemic, Defendant had a WFH policy in place at the time, and other employees in Plaintiff's department were working from home as an accommodation to the vaccine.

59. Defendant failed to provide Plaintiff with reasonable accommodations for her sincerely held religious beliefs.

60. Defendant discriminated against Plaintiff because of her religious beliefs.

61. Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

62. By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
## Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

63. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

64. Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

65. Defendant responded with a blanket denial of Plaintiff's request for religious accommodations.

66. Defendant did not allow for appeal.

67. Defendant responded to Plaintiff's protected activity by giving Plaintiff the false choice between vaccination and effective termination.

68. Plaintiff's religious beliefs and protected activity were the causes of Defendant's adverse employment action. Defendant did not bother engaging in an interactive process with Plaintiff because Defendant never intended to provide accommodations even if it conflicted with Plaintiff's sincerely held religious beliefs. Defendant's disregard and disparate treatment of religious accommodation requests for exemption from Covid-19 vaccination confirms Defendant's hostility to requests for religious accommodation.

69. Defendant retaliated against Plaintiff's protected activity by terminating Plaintiff's employment.

70. By retaliating against Plaintiff for engaging in protected activity, Defendant violated Title VII. This violation harmed and continues to harm Plaintiff.

## COUNT III
## Violation of R.C. § 4112.02
### Religious Discrimination in Employment

71. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

13

72. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on religion.

73. Defendant violated Ohio's Anti-Discrimination law when it terminated Plaintiff due to her religious objections to the Covid-19 vaccine.

74. Defendant has reasonable alternatives available that could have been offered to accommodate Plaintiff's religious beliefs, but Defendant refused Plaintiff those accommodations.

75. Defendant discriminated against Plaintiff because of her religion.

76. Defendant's failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a. Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

A trial by jury is demanded for all issues so triable.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
